### MILSTEIN v. MOSHER.

(Supreme Court, Appellate Division, Third Department. May 6, 1908.)

PRINCIPAL AND AGENT—AUTHORITY—HUSBAND AND WIFE—LANDLORD AND TENANT.

A husband living apart from his wife had no authority to assign a lease of premises held by her to the purchaser of the fee, where his power of attorney from her was limited to the collection of debts and the receipt of personalty upon which she had a lien, etc.; and hence she having previously sublet the premises with a privilege to the subtenant to renew on giving notice within a specified time, and the subtenant having given her such notice, such purchaser has no right to dispossess the subtenant for his failure to serve notice on him.

Smith, P. J., dissenting.

Appeal from Albany County Court.

Summary proceedings by Isaac Milstein against James T. Mosher. From a judgment affirming a final order dispossessing the tenant, he appeals. Reversed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Walter E. Ward (Andrew J. Nellis, of counsel), for appellant.
Dugan & Cook (Daniel J. Dugan, of counsel), for respondent.

JOHN M. KELLOGG, J. One Bella Tucker held a lease of the premises in dispute for five years from May 1, 1905. February 21, 1906, she sublet all of the premises except one room to the appellant Mosher, for 14 months from March 1, 1906, with the right to a renewal covering the whole premises for the additional term of one year "by giving a written notice of such intention to renew on or before February 1, 1907." The petitioner Milstein in October, 1906, bought the fee of the property, and January 2, 1907, received the deed therefor. At the time of his purchase in October there was written upon the lease to Tucker an assignment thereof to Milstein, which was signed by her husband Israel Tucker, with the name "Bella Tucker by Israel Tucker." Mosher paid his rent to Chism, who was the agent

for the owner, and Chism receipted for the rents as payments from Tucker. In October, immediately after the contract of purchase, the petitioner, as he claims, notified the appellant that he had purchased the place, and showed him the lease with the assignment thereon. He gave no directions, however, as to the payment of rent, and did not inform him when the deed was to be given. Defendant claims he was not notified until in February. The appellant continued to pay his rent to Chism until March, and received the receipts in the usual form as payments to the owner by Tucker upon his lease. The January and February rents were turned over by Chism to the petitioner. At the time the petitioner took the assignment of the lease, he knew that the appellant had the right to renew by serving a notice on or before February 1st, and knew that he intended to serve the notice and continue the lease. In the last days of January the defendant sent to Chism a written notice of a desire to continue the lease. Chism read the notice, handed it back to the person serving it, and said that he had nothing further to do with the property, that Milstein held the lease, and that the notice should be served on Bella Tucker. Thereupon, and before the 1st day of February, the defendant went to New York, where Bella Tucker resided, and served the notice upon her. No other notice was served upon the petitioner, and he institutes these proceedings claiming that the tenancy expired according to the terms of the original lease April 1, 1907. Milstein swears that in January, when he received the deed, he told Chism that the rents were thereafter payable to him; but he gave no direction to that effect to the appellant. Nevertheless he accepted the January and February rents from Chism. Bella Tucker had been carrying on a furniture store, her husband acting as her agent in the immediate conduct of the store, but just before the lease to the appellant she had closed the store and removed to New York; Tucker, her husband, remaining in Albany. It is apparent that the relations between them were strained, and from that time to the trial they had had no communication with each other, except that in May she gave him a formal power of attorney to collect debts due to her in Albany county, and to receive personal property and furniture upon which she had a lien or chattel mortgage, or which may have been bought upon conditional sale from her. At the time that Milstein took the assignment of the Tucker lease, Tucker offered to assign the lease upon payment of $150 to him, and produced this power of attorney as his authority for such assignment, which seemed to be satisfactory to the parties, and the assignment was made and the money paid. Bella Tucker knew nothing of this transaction until about the time of the trial, never received the money, and never authorized an assignment of the lease. At the time that the appellant leased the premises he took a written lease from Tucker, but afterwards seems to have been apprehensive as to Tucker's authority, or did not trust him, and went to New York and had a duplicate lease signed by Bella Tucker.

I think, under all the circumstances of this case, the appellant intending all the while to serve the notice and take the renewal, and Milstein knowing that such was the intention, that the notices served upon Chism and Bella Tucker are a sufficient compliance with the

terms of the lease. The fact that after the sale to Milstein, and the notice from him to the appellant of the purchase of the property and the lease, that payments were still made to Chism in the name of the Tuckers, was such a recognition and treatment of Chism as the agent of Milstein that the appellant was justified in treating him still as the agent of the owner, and in serving the notice upon him, and in serving the notice upon Mrs. Tucker when directed by him so to do. It is not clear that Tucker had any authority, either written or verbal, to assign this lease in behalf of his wife. His only authority to represent her was that conferred by the power of attorney, which did not authorize such an assignment. He was not authorized in writing to assign or surrender this lease as required by the real property law. Section 207, c. 547, p. 592, Laws 1896.

It is urged that the defendant cannot raise the question that such authority must be in writing, for the reason that a defense under the statute of frauds must be pleaded. The real question here is not whether the plaintiff can maintain this proceeding as the owner of the lease, but whether the notice of renewal was served upon the proper party. If plaintiff was not the owner of the lease at that time, the notice was properly served upon Bella Tucker. If the defendant has made a mistake in pleading, that fact does not destroy the effect of the existing renewal. If the defense is that the plaintiff cannot recover because he is not the owner of the lease, perhaps the answer is insufficient. The fact remains that the notice of renewal was served upon his landlord, who had not parted with her interest in the lease at the time such notice was served. The question whether a defense resting upon the statute of frauds must be pleaded is not therefore in this case. There was so much doubt whether there actually was a valid assignment of the lease by Mrs. Tucker that the service of notice upon her should be deemed sufficient under the circumstances. The tenant was not bound at his peril to decide whether this was or was not a valid assignment. It was shown to him, and he undoubtedly realized that this paper, like the lease that he formerly received from Tucker, was subject to doubt and suspicion. He was not required to attorn to and treat as his landlord one whose title was doubtful, or at least subject to dispute. It would have been much easier to serve the notice upon Milstein than to go to New York and serve it upon Mrs. Tucker. No advantage could accrue by ignoring Milstein. We must therefore treat the appellant as acting in good faith, and the lease as properly renewed. The respondent expecting that the lease would be renewed has not been misled or injured.

The judgment and order should therefore be reversed. with costs. All concur, except SMITH, P. J., dissenting, and CHESTER, J., not voting. COCHRANE, J., concurs in result on the ground that there was no authority on the part of Bella Tucker's husband to execute an assignment of the lease.